******************************************************

The ''officially released'' date that appears near the be-ginning of each opinion is the date the opinion will be pub-lished in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the be-ginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publica-tions, Judicial Branch, State of Connecticut.

******************************************************

KAHN, J., concurring. I agree with and join the majority opinion, in which the judgment of the Appellate Court is reversed with respect to the state's appeal and affirmed with respect to the cross appeal of the defendant, George Michael Leniart. That is, I agree with part I of the majority opinion that the Appellate Court properly concluded that the evidence was sufficient to sustain the defendant's conviction. See *State* v. *Leniart*, 166 Conn. App. 142, 150, 140 A.3d 1026 (2016). I also agree with part III of the majority opinion that the Appellate Court improperly concluded that the trial court abused its discretion when it precluded expert testimony proffered by the defendant regarding the reliability of jailhouse informant testimony. See id., 212. Finally, I agree with part II of the majority opinion that the trial court read this court's decision in *State* v. *Porter*, 241 Conn. 57, 93–94, 698 A.2d 739 (1997), cert. denied sub nom. *Porter* v. *Connecticut*, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), too broadly, to require the per se exclusion of the videotaped interview of Patrick J. Allain (interview), conducted prior to his polygraph test, but that any error as to this evidentiary ruling was harmless. Our holding in *Porter* was confined solely to the results of the polygraph test and the willingness of the witness to submit to that test— evidence of either is per se inadmissible. See id., 93. As a result of its overly broad reading of *Porter*, the trial court improperly failed to exercise its discretion to determine whether the interview evidence, given the facts and circumstances presented, would have been more probative than prejudicial.

I write separately solely to emphasize that, because the interview was conducted in conjunction with a pending polygraph test, the inclusion of any portions of the interview that disclose that fact would be inadmissible under *Porter* to the extent that such evidence would make clear that Allain had agreed to submit to a polygraph test. Further, I agree with the state that any reference to the fact that the interview took place in the context of a polygraph test may lead the jury to improperly speculate as to the results of that test. In the present case, the jury's speculation would have run, if anything, against the defendant. As the state conceded at oral argument before this court, from the fact that Allain submitted to a polygraph test and the state then chose to call him as a witness, the jury reasonably could have inferred that Allain passed that test. That inference would have bolstered Allain's credibility, rather than undermining it.

The substance of some of the comments of the polygraph examiner, Trooper Tim Madden of the Connecticut State Police, during the interview would have

increased the likelihood that the jury would infer from the videotape that Allain had passed the polygraph test. For example, Madden explained to Allain that, although he did not care whether Allain was truthful during the polygraph test, the prosecution team, "want[s] you to pass this polygraph. They want to get you to be identified as a reliable witness." Put another way, he explained to Allain that, "if you fail this, what happens is, it gets to a point where you now become a less reliable witness . . . ." Madden framed the issue in terms of how useful Allain would be to the state as a witness. If Allain told the truth and passed the polygraph test, then "we can use [you] as a witness as opposed to an accused, alright? It works to our benefit because we have a good, solid, confirmed, reliable witness, alright?"

Throughout the interview, Madden emphasized the importance of passing the test. For example, he stated to Allain that, if he failed, "then you're no longer useful. Gotta come out with all of it, and you gotta pass. Then you're very useful. Then we can say, hey look, this is a cooperating witness. He has a lot of value to us. That's why it's imperative that it all comes out and you pass the polygraph. Alright. You understand what I'm saying?"

The excerpted portions of the interview demonstrate that the jury could infer from Madden's statements that the state would use Allain as a witness only if he passed the polygraph test. It would not require a Holmesian leap for the jury to further infer from the fact that the state called Allain as a witness that he had indeed passed the polygraph test.

This would be particularly detrimental to the defendant's case because it is at least arguable that Allain failed the polygraph test. See *State* v. *Leniart*, supra, 166 Conn. App. 185 ("The defendant contends, on the basis of a report disclosed to the defense by the state, that Allain failed the polygraph examination. Although the state conceded that the report contained a preliminary conclusion that some of Allain's answers were consistent with deception, the state argued that it would have had to conduct additional testing to determine whether Allain actually failed the polygraph test. There is no evidence that the state performed such testing despite the officers' representations to Allain that the test would definitively determine if he was telling the truth, and thus he must take and pass it before he would be permitted to testify and become eligible for favorable treatment in connection with [the victim's] rape, disappearance, and death.") The trial court's proper exercise of its discretion would prevent this eventuality. Although there are multiple references to the polygraph during the interview, there are sections of it that do not refer to the impending test. Had the court exercised its discretion, it would have examined the entire videotape to determine whether all or part of the interview

would disclose that the questions and answers were in the context of a polygraph test. Having done so, the court could consider whether the videotape could be redacted to remove any such references to the polygraph. Another option the court properly could have considered in the exercise of its discretion would have been to admit only the portions of the interview that the defendant claimed were useful and did not disclose that the interview was in the context of a polygraph test.

Finally, I note my agreement with the majority opinion, for all the reasons stated therein, that the error was harmless.

———————————————